366 So.2d 1243 (1979)
Milton GAYNOR d/b/a North Miami Villas, Appellant,
v.
Fred C. WILLIAMS, etc., et al., Appellees.
No. 78-427.
District Court of Appeal of Florida, Third District.
February 6, 1979.
Spence, Payne & Masington, Daniels & Hicks, and Mark Hicks, Miami, for appellant.
Pyszka, Kessler & Adams, Fort Lauderdale, Rentz, McClellan & Haggard and L. Edward McClellan, Jr., Miami, for appellees.
Before PEARSON, KEHOE and SCHWARTZ, JJ.
SCHWARTZ, Judge.
Milton Gaynor is primarily a banker and an insurance man. He also individually owns among other properties, an apartment complex called the North Miami Villas, which he runs through a general manager, and from which he derives all the profits. We agree with the trial judge that, as a matter of law, Gaynor is not covered by his umbrella personal liability policy for an accident arising out of the operation of the apartment house,[1] because of an exclusion, common in such policies, which states that it does not apply
"... to any business pursuits or business property... of an insured ..."
The summary judgment entered below in favor of the carrier, Lumbermens Mutual Casualty Company, on the issue of coverage is therefore affirmed.
Gaynor's ownership of the complex clearly constituted a "continuous and comprehensive ... activity for financial gain ...," and thus fell within the accepted definition of a "business pursuit."[2]O'Conner v. Safeco Ins. Co. of North America, 352 So.2d 1244, 1246 (Fla. 1st DCA 1977); Peterson v. Highlands Ins. Co., 328 So.2d 49 (Fla.3d DCA 1976); Otero v. United States Fire Ins. Co., 314 So.2d 208 (Fla. 3d DCA 1975), cert. denied, 328 So.2d 843 (Fla. 1976).
Furthermore, it does not matter that the ownership of the apartment house was not *1244 Gaynor's only or main occupation. See Wiley v. Travelers Ins. Co., 534 P.2d 1293 (Okl. 1974); Stern v. Ins. Co. of North America, 62 N.J. 582, 303 A.2d 883 (1973). The only case cited by the appellant for the contrary proposition, Southern Guaranty Ins. Co. v. Duncan, 131 Ga. App. 761, 206 S.E.2d 672 (1974), is not persuasive and is, in any case, meaningfully distinguishable. The policy involved there defined "business" as a "trade, profession or occupation, including farming ..." The policy involved in this case, however, states only that the term "`business' includes trade, profession or occupation." Since the word "includes" is a term of expansion,[3]Jacksonville Terminal Co. v. Blanshard, 77 Fla. 855, 82 So. 300 (1919); Greyhound Lines, Inc. v. City of Chicago, 24 Ill. App.3d 718, 321 N.E.2d 293, 302 (1974), the definition here must be read to mean that business includes, but is not limited to the "trade, profession or occupation" of the insured. Both the "common understanding of the term ...," Braley v. American Home Assurance Co., 354 So.2d 904, 907 (Fla. 2d DCA 1978), cert. denied, 359 So.2d 1210 (Fla. 1978), and the decided cases show that Gaynor's "business pursuits" included the activity involved here.
Affirmed.
NOTES
[1] The underlying suit against Gaynor was a wrongful death action brought by the parents of a child who was electrocuted on a negligently maintained fence on the premises.
[2] Similarly, the building itself was "business property" within the meaning of the exclusion. Cf. Dewey v. Niagara Fire Ins. Co., 16 Ohio Misc. 297, 242 N.E.2d 692 (C.P. Cuyahoga Co. 1968).
[3] The appellant argues that "includes" should be viewed as a word of limitation so that the Lumbermens' policy provision would be interpreted as meaning that "`business' comprises trade, profession, or occupation." Under this view, however, the phrase would mean precisely the same with or without the word "includes." The adoption of this argument would therefore run directly contrary to the rule that, if possible, each word of a contract should be ascribed some effect and meaning. Florida East Coast R. Co. v. City of Miami, 76 Fla. 277, 79 So. 682 (1918); Royal American Realty, Inc. v. Bank of Palm Beach & Trust Co., 215 So.2d 336 (Fla. 4th DCA 1968).