813 So.2d 432 (2001)
Jana B. LeCOMPTE and Baron J. LeCompte, Individually and as Administrator of His Minor Child, Tayler LeCompte
v.
LAFAYETTE INSURANCE COMPANY and Walter Sawyer.
No. 2000 CA 1547.
Court of Appeal of Louisiana, First Circuit.
September 28, 2001.
*433 Jerald P. Block, Kimberly A. Theriot, Thibodaux, for Plaintiffs/Appellees, Jana B. LeCompte and Baron J. LeCompte, Individually and as Administrator of His Minor Child, Tayler LeCompte.
Maurice P. Mathieu, Houma, for Defendant/Appellee, Walter Sawyer.
Joseph A. Reilly, Jr., Stacy A. LeCompte, Houma, for Defendant/Appellant, Lafayette Insurance Company.
Before: FITZSIMMONS, WEIMER and DOWNING, JJ.
DOWNING, Judge.
Lafayette Insurance Company, hereinafter, "Lafayette," appeals two partial summary judgments rendered against it in favor of the plaintiffs/appellees, Jana and Baron LeCompte,[1] and in favor of codefendant/appellee, Walter Sawyer. Lafayette also appeals the trial court's denial of its motion for summary judgment. Lafayette contests the trial court's ruling that an insurance policy exclusion was not applicable where the exclusion precluded coverage of the subject premises while rented on other than an occasional basis. For reasons stated, we affirm.

FACTS AND PROCEDURAL HISTORY
The LeComptes filed suit against Lafayette and Walter Sawyer on January 13, 1998, alleging that their minor daughter, Tayler Nicole, suffered personal injuries to her foot from a nail protruding from a fishing wharf attached to property in Raceland, Louisiana, then rented by Curt and Sonya Matherne but owned by Sawyer. Upon completion of discovery, the LeComptes and Sawyer filed motions for partial summary judgment against Lafayette on the issue of insurance coverage. Lafayette also filed a motion for summary judgment on the same issue alleging that an exclusion clearly and unambiguously *434 denied coverage under the facts of this case.
On February 4, 2000, the trial court heard the motions for summary judgment and ruled in favor of the LeComptes and Sawyer and against Lafayette, concluding as a matter of law that the insurance policy exclusion at issue was not applicable in this matter. The trial court signed a judgment to this effect on February 18, 2000, which it certified as a final judgment.
Lafayette now appeals asserting as its one assignment of error that the trial court committed manifest error by failing to give the language of an insurance policy exclusion its allegedly clear, unambiguous and obvious meaning as required by law.

DISCUSSION
An appellate court's review of a summary judgment is a de novo review based on the evidence presented at the trial court level, using the same criteria used by the trial court in deciding whether a summary judgment should be granted. J. Ray McDermott, Inc. v. Morrison, 96-2337, p. 9 (La.App. 1 Cir. 11/7/97), 705 So.2d 195, 202, writs denied, 97-3055 (La.2/13/98), 709 So.2d 753, 754. The narrow issue before this court involves an exception to an exclusion in a property insurance policy where coverage is provided if owned property was rented to others on an "occasional" basis. The presence or absence of insurance coverage in this matter depends on this determination. In deciding the cross-motions for summary judgment, the trial court concluded in its oral reasons that this provision, set forth below, was ambiguous.
We conclude that the trial court erred in this regard, but that for other reasons, its judgment was legally correct. In Blue Ridge Insurance Co. v. Newman, 423 So.2d 1 (La.App. 1st Cir.1982), amended in part, reversed in part on other grounds, 453 So.2d 554 (La.1984), this court considered the meaning of "occasional" in the context of a very similar insurance policy provision addressing "business pursuits."[2] In Blue Ridge this court provided a definition for the word, "occasional," from Webster's New International Dictionary, Second Edition, as follows:
a) Occurring now and then;
b) Made or happening as opportunity requires or admits;
c) Casual;
d) Incidental; and
e) Occurring at irregular intervals, infrequent.
Blue Ridge, 423 So.2d at 4.
The Blue Ridge court found the antonym of "occasional" to be "continuous" as *435 defined in Black's Law Dictionary (5th Ed. 1979):
Continuous. Uninterrupted; unbroken; not intermittent or occasional; so persistently repeated at short intervals as to constitute virtually an unbroken series. Connected, extended, or prolonged without cessation or interruption of sequence.
Id., 423 So.2d at 4.
Given this settled definition, the trial court committed error in finding the rental exclusion to be ambiguous. We therefore continue our de novo review to determine the merits of the cross-motions for summary judgment.
"Whether the rental or holding for rental of the insured premises is occasional or continuous is a question of law as well as fact, and is to be determined from all the facts of each particular case." Id., 423 So.2d at 4. Here, there is no dispute over the facts, and the only question before the court is an issue of insurance policy interpretation. Policy interpretation is an issue of law. United Services Automobile Assoc. v. Dunn, 598 So.2d 1169, 1170 (La. App. 1st Cir.1992).
The policy provision at issue provides in pertinent part as follows:
1. COVERAGE EPersonal Liability and COVERAGE FMedical Payments to Others do not apply to "bodily injury" or "property damage":
. . . .
b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";
c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":
(1) On an occasional (emphasis added) basis if used only as a residence;
In considering a similar policy exclusion, albeit within an exclusion addressing "business pursuits," the Blue Ridge court found the purpose of the exclusion was to provide homeowners with lower insurance rates because insuring the risks attendant to commercial enterprises requires specialized rating and underwriting and is more expensive. Blue Ridge, 423 So.2d at 3.
Under the definitions and purpose provided, we conclude the objective, undisputed facts establish that the rental to the Mathernes, during which time the accident at issue occurred, was made on an occasional basis and not as part of a continuous practice of leasing the property. Sawyer had listed his former home for sale with a realtor when the Mathernes approached him about renting the property. They had heard of the possible availability of the property for lease by word of mouth and approached Sawyer. They planned to lease the property temporarily as an interim house until they could buy a new home. They entered an oral lease, which began within a month of the termination of the prior lease. The Mathernes and Sawyer discussed the Mathernes purchasing the premises at issue. Once the Mathernes moved out after about ten months, Sawyer did not again lease the home. He succeeded at some point in selling the property.
The record shows that Sawyer had rented the home under similar conditions to one other person after he moved from the *436 subject property in Raceland and relocated to the New Orleans area.[3] Ms. Linda Billiot's undisputed testimony was that she was in desperate circumstances and that she had heard by word of mouth that Mr. Sawyer's home was for sale, but that he might lease it. When she approached him, he agreed to lease the property to her, although it is unclear whether the lease was in writing or oral. She stayed in the home twelve months. She testified at deposition that Sawyer's stated goal was to sell the property.
Under these undisputed facts, we cannot say as a matter of law that Sawyer's two rentals of the property at issue established a pattern of rentals so uninterrupted, so unbroken, or so persistently repeated at short intervals as to constitute virtually an unbroken series. Nor can we say Sawyer's lease of the property to the Mathernes was connected, extended, or prolonged without cessation or interruption to any prior or subsequent rental of the premises. The attempts to sell intervened. We therefore conclude the rental to the Mathernes was made on an "occasional" basis.
In support of this conclusion we cite the following federal cases. In Insurance Company of North America v. Howard, 679 F.2d 147, 149 (9th Cir.1982), the court concluded under similar circumstances that, "[a] recent widow who leases her home for a one-year period (with or without a 30 day cancellation provision) while she attempts to resolve her future plans has certainly not gone into the business of renting homes. Her action was a temporary expedient and constitutes an occasional rental." In American Family Mutual Insurance Company v. Richardson, 517 F.Supp. 125, 128 (E.D.Mo.1981), the court ruled:
[T]he rental of the old frame house was occasional in that the farmhouse was not rented and/or occupied continuously from tenant to tenant.
* * * * *
Further support for the premise that the rental of the farmhouse was not a business pursuit is evidenced by the fact that the rental of the farmhouse was by oral month to month tenancies; there was no formal advertising of the farmhouse in the news media, and occupants were obtained solely by word of mouth.
We also distinguish the facts in Blue Ridge, which case was amended and reversed on other grounds. In Blue Ridge, a family continued to possess property and hold it for the purpose of subsequent rental after all family members moved out, although it was not occupied at the time of the subject accident. This court concluded that "by definition, the property was used for business purposes[4] either while it was rented or held for rent." Blue Ridge, 423 So.2d at 4. The court stated that, "the term `holding for rental' means possessing for the purpose of renting the premises when the premises are not actually being rented." Id.
The undisputed facts before us, however, establish under this definition that Sawyer was not holding the subject property *437 for rental. Rather, he was holding the property for sale, at least during the periods before and after the two tenancies. And the lease to the Mathernes, during whose tenancy the alleged injury occurred, was "occasional" in that it was made as the opportunity required or admitted.
The undisputed facts in this case establish that Sawyer was not continuously renting or holding for rental the premises at issue here when Tayler LeCompte allegedly suffered personal injury. By definition, then, the property was being leased on an occasional basis.
For reasons stated Lafayette's assignment of error is without merit.

CONCLUSION
The judgment of the trial court is affirmed in all respects. Costs of this appeal are taxed to Lafayette.
AFFIRMED.
FITZSIMMONS, J., dissents, and assigns reasons.
FITZSIMMONS, Judge, dissenting with reasons.
I respectfully disagree with the majority's interpretation of the holding in Blue Insurance Company v. Newman, 423 So.2d 1 (La.App. 1st Cir.1982), and its decision to affirm in the case presently before us. In Blue Insurance Company, at the appellate level, this court found that the trial court was not clearly wrong in its finding that the premises were "rented almost exclusively until the time of the loss...." We further noted that the Newmans "either rented or held for rental the insured premises during a continuous fifteen-month period, which included the time when the accident occurred." The business pursuits exclusion was deemed applicable.
Thereafter, the Louisiana Supreme Court observed: "The court of appeal, noting that Newman had rented the property 11 of the 15 months after his father moved out, concluded that Newman had rented or held the property for rental continuously, and not just occasionally ...." (underlining supplied) Blue Ridge Insurance Company v. Newman, 453 So.2d 554, 556 (La. 1984). The supreme court, however, rendered its decision to reverse in part on other grounds.
In the instant case, Mr. Sawyer's uninterrupted rental of his premises to Ms. Billiot for an approximately twelve-month period immediately after the termination of a prior rental does not conform to the characteristics describing "occasional" established in Webster's New International Dictionary, i.e., "occurring now and then," "casual," "incidental," or "occurring at irregular intervals; infrequent."
I would reverse the trial court grant in favor of Jana and Baron LeCompte and Walter Sawyer. Finding the exclusionary provision applicable, I would grant summary judgment in favor of Lafayette.
NOTES
[1] The LeComptes respond as parties to this appeal individually and as administrator of his minor daughter, Tayler Nicole LeCompte.
[2] In Blue Ridge, the policy exclusion at issue provided as follows:

This policy does not apply:
1. Under Coverage E-Personal Liability and Coverage F-Medical Payments to Others:
. . . .
d. to bodily injury or property damage arising out of business pursuits of any Insured except activities therein which are ordinarily incident to nonbusiness pursuits; ..."
In Section 8 of the General Conditions portion of the policy, the term "business" is defined as follows:
"When used in this policy the following definitions apply: ...
d. `business' means
. . . .
(2) the rental or holding for rental of the whole or any portion of the premises by any Insured;
but business shall not include:
(a) the occasional rental or holding for rental of the residence premises for dwelling purposes; ... (Emphasis added.)
Blue Ridge, 423 So.2d at 2-3.
[3] The record suggests Sawyer may have leased the property to a third person at some point, but there is no evidence in the record as to when, to whom or under what terms this lease may have been perfected.
[4] Lafayette does not attempt to deny coverage here under the "business purpose" exclusion in the policy at issue as set forth above. Policy, Sec. II, Exclusion 1(b). The record does not support a conclusion that Sawyer was engaged in any commercial enterprise on the subject property. Rather, his main concern was keeping the mortgage paid until he could sell the property.